UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

TYRONE BARNES,

                Petitioner,

   - against -

UNITED STATES OF AMERICA

                Respondent.

------------------------------------------------------------X

**OPINION AND ORDER**

**13 Civ. 1226  (SAS)**

**09 CR 1053 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

        On July 21, 2011, pro se petitioner Tyrone Barnes ("Barnes" or "petitioner") was sentenced to 210 months of imprisonment after pleading guilty to conspiracy to distribute heroin (Count One) and possession with intent to distribute heroin (Count Two).  Barnes appealed his sentence to the Second Circuit which affirmed this Court's judgment on June 11, 2012.[1]  Barnes now moves to vacate, set aside or correct his sentence pursuant to Title 28, United States Code, section 2255 ("section 2255").  In his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "Motion"), Barnes alleges that his trial attorney: (1) misjudged Barnes' sentencing exposure, first leading him to reject pleading guilty prior to trial and, then, convincing him to plead guilty mid-trial without the benefit of a plea agreement; (2) failed in the

---

[1]     *See United States v. Barnes*, 480 Fed. App'x 77, 79 (2d Cir. 2012).

filing, preparation, and investigation of the suppression hearing in the criminal case; and (3) suffered from financial difficulties that adversely affected his ability to represent Barnes.  For the reasons set forth below, Barnes' section 2255 Motion is denied.

## I.    BACKGROUND

### A.    Offense Conduct and Procedural History

#### 1.    The Charges

Indictment 09 CR 1053 (SAS) (the "Indictment") was filed in two counts.  Count One charged Barnes with conspiring to distribute, and to possess with the intent to distribute, at least one kilogram of heroin in violation of Title 21, United States Code, section 846.  Count Two charged Barnes with distributing, and possessing with the intent to distribute, a quantity of heroin in violation of Title 21, United States Code, sections 841(a)(1) and 841(b)(1)(C).

#### 2.    The Suppression Hearing

On March 3, 2010, this Court held a hearing on Barnes' motion to suppress a quantity of heroin seized from his car on October 14, 2009.  At the suppression hearing, Barnes was represented by Benjamin Heinrich.  In his affirmation filed in support of Barnes' motion to suppress, Heinrich argued that the police officers who stopped Barnes' car and arrested him lacked probable cause to

do so.  Heinrich further argued that the warrantless search of Barnes' car, which
resulted in the seizure of heroin, was conducted in violation of the Fourth
Amendment to the United States Constitution.

At the hearing, the Government called two New York City Police
Department ("NYPD'") officers who stopped Barnes' car and arrested him.  The
testimony of the police officers established that they had stopped Barnes' car after
learning from another individual that it had been involved in a car accident a few
moments earlier.  The officers arrested Barnes because of his involvement in the
hit-and-run accident.  Prior to the hearing, the Government produced the 3500
material for the two police officers, which included an NYPD accident report
completed by one of the officers.[2]

At the hearing, Heinrich cross-examined both officers extensively on
their reasons for stopping Barnes and placing him under arrest.  The Court heard
oral argument from Heinrich and the Government on the legal and factual issues
that were the subject of the hearing.  After hearing the evidence and the parties'
arguments, I denied Barnes' motion to suppress, finding that the officers had
probable cause to arrest Barnes which, in turn, validated the search of Barnes' car.

---

[2]      *See* Police Accident Report, Ex. B to the 5/1/13 Declaration of Amy
Lester ("Lester Decl."), Assistant United States Attorney ("AUSA").

### 3.    The Trial and Guilty Plea

The evidence at trial – which ended when Barnes pled guilty after only three witnesses testified against him – proved conclusively that Barnes possessed a quantity of heroin on October 14, 2009, when he was involved in a minor traffic accident with a livery cab in the Bronx, New York.  The Government's proof consisted of (1) the testimony of the livery cab driver; (2) the testimony of the two police officers who testified at the suppression hearing; (3) heroin that the officers seized from Barnes' car; (4) two gravity knives recovered from Barnes; and (5) nearly $500 in cash recovered from Barnes.

On October 14, 2009, Barnes was stopped in the Bronx by two NYPD officers shortly after he had a traffic accident involving a livery cab.[3]  As Barnes got out of his car and approached the officers, one officer noticed that he had a gravity knife in his pocket.[4]  The officers then arrested Barnes and discovered two packages of heroin in the front seat of his car.[5]  Following Barnes' arrest, the officers found a second gravity knife as well as $470 in cash in his possession.[6]

---

[3]     *See* Trial Transcript ("Tr.") at 54-55, 95-96.

[4]     *See id.* at 55-56. 96.

[5]     *See id.* at 98.

[6]     *See id.* at 103.

While the officers were transporting Barnes to the police precinct, he boasted that this was a small arrest.  Had the officers arrested him the day before, they would have seized one-hundred "bundles" of heroin from him.[7]

The trial concluded on June 9, 2010, when Barnes indicated that he wished to plead guilty.[8]  Barnes pled guilty to both counts of the Indictment without a plea agreement.[9]  Prior to trial, however, the Government provided Barnes with a *Pimentel* letter,[10] setting forth the Government's position regarding the application of the United States Sentencing Guidelines (the "Guidelines") to Barnes' offenses.[11]

During the plea allocution, the Court confirmed that Heinrich had advised Barnes of the maximum penalties he faced upon a guilty plea, as well as

---

[7]     *See id.* at 60-61, 108.  A "bundle" typically consists of ten glassine envelopes of heroin, each of which sells for approximately ten dollars.  Thus, 100 bundles represents 1,000 bags of heroin.

[8]     *See id.* at 123.

[9]     *See id.* at 129.

[10]     *See United States v. Pimentel*, 932 F.2d 1029 (2d Cir. 1991).

[11]     *See* 6/2/10 Letter from AUSAs Telemachus Kasulis and Amy Lester, Ex. C to the Lester Decl., at 3 (stating that, at offense level 42 and Criminal History Category II, petitioner's Guidelines range is 360 months to life imprisonment).

how the Guidelines operated.[12]  Barnes stated that he had discussed the

consequences of pleading guilty with Heinrich and that he was satisfied with

Heinrich's representation.[13]  The Court then specifically advised Barnes of the

applicable penalties with respect to each count of the Indictment, including the

ten-year mandatory minimum on Count One.[14]  The Court also informed Barnes

that the Guidelines applicable to his case could be as high as thirty years to life but

could be as low as ten to thirty years.[15]  The Court repeatedly emphasized that

Barnes faced a ten-year mandatory minimum sentence on Count One regardless of

his Guidelines range.[16]  Barnes stated that he understood his sentencing exposure

and that no one promised him what his sentence would be.[17]

After the Court advised him of the applicable penalties, Barnes

confirmed that he still wished to plead guilty and admitted that between 1995 and

2009, he and others sold more than one kilogram of heroin in the Andrew Jackson

--------

[12]     *See* Tr. at 132.

[13]     *See id.*

[14]     *See id.* at 137-138.

[15]     *See id.* at 140.

[16]     *See id.* at 141.

[17]     *See id.* at 142.

Houses housing projects in the Bronx, New York.[18]  Barnes further admitted that

he possessed heroin in his car on October 14, 2009.[19]

### 4.    The Sentencing

Prior to sentencing, Heinrich was relieved as Barnes' counsel and new

counsel was appointed pursuant to the Criminal Justice Act.[20]  On July 21, 2011,

Barnes was sentenced to concurrent terms of 210 months imprisonment on Counts

One and Two, to be followed by concurrent terms of five years supervised release.

The sentence imposed represented the low end of the Guidelines range (210 to 262

months).

### 5.    The Appeal

Barnes filed a timely appeal of his sentence, on the following grounds:

(1) this Court erred in calculating his Guidelines range after having found that

Barnes conspired to distribute between three and ten kilograms of heroin; (2) this

Court committed procedural and substantive error by denying Barnes a downward

departure from the Guidelines range; and (3) the 210-month sentence was

substantively unreasonable in light of Barnes' strong ties to his family and

---

[18]    *See id.* at 143.

[19]    *See id.* at 144.

[20]    *See* 12/6/10 Letter from Benjamin Heinrich to the Court, Ex. 2 to the 4/26/13 Declaration of Benjamin Heinrich, Esq. ("Heinrich Decl.").

community.  On May 8, 2012, the Second Circuit rejected these arguments and affirmed Barnes' sentence.[21]

**B.      The Motion**

   **1.      Allegations of Ineffectiveness**

 In his Motion, Barnes argues that his counsel was ineffective because, *inter alia*, he misjudged Barnes' sentencing exposure which affected the course of plea negotiations.  Specifically, in the Movant's Affidavit in Support for Habeas Corpus Pursuant to 28 U.S.C. Section 2255 ("Barnes Aff."), Barnes alleges the following with respect to plea negotiations: (1) in February 2010, he asked his attorney to negotiate a plea to the possession charge and "[c]ounsel stated that he was negotiating a plea agreement that would set the sentence to be a term of probation;"[22] (2) on June 5, 2012, the parties negotiated a "120-month plea bargain" which Barnes rejected "after extensive discussions with counsel" who advised him that the "maximum sentence at trial would be from 84 to 96 months;"[23] (3) on the second day of trial, counsel advised Barnes to plead guilty based on the fact that a Government witness who sold heroin for Barnes over a

---

[21]      *See Barnes*, 480 Fed. App'x at 79.

[22]      Barnes Aff. ¶¶ 3-4.

[23]      *Id.* ¶ 9.

8

period of years was going to testify; counsel told Barnes that his "maximum sentence should be no more than 8 years;"[24] and (4) the 210-month sentence imposed by the Court was "far greater" than Barnes anticipated, "based on the advise [sic] of counsel."[25]

Barnes also alleges that his counsel: was "ill-prepared to conduct" the suppression hearing; was deficient in filing the motion to suppress on January 28, 2010, and failed to investigate the automobile accident that was the subject of the hearing by neglecting to obtain the accident report.[26]   Finally, Barnes alleges that counsel "appeared to have financial difficulties and undue pressures that affected his ability to defend" him on the basis that counsel allegedly asked Barnes to arrange a loan to him from one of Barnes' friends.[27]

## 2.    Defense Counsel's Response

In response to Barnes' allegations of ineffective assistance, Heinrich stated that: (1) he advised Barnes of his potential sentencing exposure in the criminal case, including his sentencing exposure after he pled guilty;[28] (2) he

---

[24]   *Id.* ¶¶ 11-12.

[25]   *Id.* ¶ 14.

[26]   *Id.*  ¶¶ 5-7.

[27]   *See id.* ¶ 8.

[28]   *See* Heinrich Decl. ¶ 4.

outlined Barnes' potential defenses and options, including cooperation with the Government;[29] (3) prior to trial, he informed Barnes that "an important witness" for the Government (Charmaine Douthett) would likely testify at trial;[30] and (4) prior to the guilty plea, Barnes was informed that "he was pleading guilty with no promise by anyone as to what his sentence would be, and he was made fully aware of his potential sentencing exposure."[31]  Heinrich also confirmed that the Government never made a formal plea offer to Barnes.[32]   Finally, Heinrich explained that he was not experiencing any financial difficulties while representing Barnes.[33]

Although a formal plea offer was never extended to Barnes, the parties undertook informal plea discussions in which they contemplated a plea bargain where the Guidelines range would have been very close to the ten-year

---

[29]     *See id.*

[30]     *See id.* ¶ 7.

[31]     *Id.* ¶  8.

[32]     *See id.* ¶ 6 ("At no stage of the prosecution of this case did the Government make a plea offer to Mr. Barnes.").  *See also* Lester Decl. ¶ 3 ("At no stage of the prosecution of this case did the Government make a plea offer to Tyrone Barnes.").

[33]     *See* Heinrich Decl. ¶ 9 ("The only requests [he] made for monies from those close to Mr. Barnes were to satisfy the terms of the retainer agreement.").

statutory minimum.[34]  Given that there had been informal plea negotiations, I

confirmed, at the plea allocution, that the Government had never extended an

actual plea offer to Barnes.[35]  At the plea allocution, AUSA Kasulis responded to

the Court's inquiry as to what the minimum Guidelines range would be assuming

no leadership enhancement or additional drug weight.[36]  AUSA Kasulis explained

that, during informal plea discussions between the Government and defense

counsel prior to trial, the parties discussed the outlines of a plea agreement that

would not include a leadership enhancement and that would include a Guidelines

range based on a quantity of drugs that was close to the mandatory minimum of ten

years.[37]  AUSA Kasulis unequivocally states that no plea offer was ever conveyed

to counsel or Barnes, contrary to the assertions in Barnes' Motion.[38]  I credit

Heinrich and AUSA Kasulis who agree that no plea offer was ever made.

---

[34]     *See* Tr. at 128-129 (AUSA Kasulis stating that "when we were
negotiating a possible disposition of the case before trial, we talked about a plea
agreement for instance which we would not seek leadership points").

[35]     *See id.* at 129 ("I have also been informed by the government and by
Mr. Heinrich that this is not pursuant to a plea agreement.  There is no
agreement.").

[36]     *See* 6/6/13 Declaration of AUSA Telemachus P. Kasulis ¶ 4.

[37]     *See id.* ¶ 5.

[38]     *See id.*  According to Barnes, he rejected a 120-month plea bargain on
the advice of counsel who allegedly told him that he would face a maximum of
eighty-four to ninety-six months at trial.  *See* Barnes Aff. ¶ 9.

11

## II.    LEGAL STANDARDS

### A.    Section 2255 Motion

Section 2255 provides as follows:

> A prisoner in custody under sentence of a court established
> by Act of Congress claiming the right to be released upon
> the ground that the sentence was imposed in violation of
> the Constitution or laws of the United States, or that the
> court was without jurisdiction to impose such sentence, or
> that the sentence was in excess of the maximum authorized
> by law, or is otherwise subject to collateral attack, may
> move the court which imposed the sentence to vacate, set
> aside or correct the sentence.

Relief under section 2255 is available "only for a constitutional error, a lack of

jurisdiction in the sentencing court, or an error of law or fact that constitutes a

fundamental defect which inherently results in [a] complete miscarriage of

justice."[39]  Because collateral challenges are in tension with society's strong

interest in the finality of criminal convictions, the courts have established rules that

"make it more difficult for a defendant to upset a conviction by collateral, as

opposed to direct, attack."[40]

------

[39]    *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (per curiam) (quotation marks and citation omitted).

[40]    *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (quotation marks and citation omitted).

The Second Circuit has interpreted section 2255 "as requiring a hearing in cases where the petitioner has made a 'plausible claim' of ineffective assistance of counsel."[41]   The petitioner need establish only that he has a "plausible" claim of ineffective assistance of counsel, not that "he will necessarily succeed on the claim."[42]   To warrant a hearing, a petitioner's "application must contain assertions of fact that [the] petitioner is in a position to establish by competent evidence."[43]   The court must then determine whether, viewing the record "in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish at a hearing a *prima facie* case for relief."[44]

However, "[a]iry generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing."[45]   Nor is the Court required to presume the credibility of factual assertions "where the assertions are contradicted by the record in the underlying

---

[41]     *Morales v. United States*, 635 F.3d 39, 45 (2d Cir. 2011) (quoting *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009)).

[42]     *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000).

[43]     *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987).

[44]     *Puglisi*, 586 F.3d at 213.

[45]     *Haouari v. United States*, 510 F.3d 350, 354 (2d Cir. 2007) (quoting *Aiello*, 814 F.2d at 113-14).

proceeding."[46]   Moreover, "'[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion.'"[47]   Depending on the allegations in the petition, a "court may use methods under [s]ection 2255 to expand the record without conducting a full-blown testimonial hearing."[48]   Potential methods available to a court to supplement the record include "'letters, documentary evidence, and, in an appropriate case, even affidavits.'"[49]

**B.     Ineffective Assistance of Counsel**

To establish a claim of ineffective assistance of counsel, a petitioner must show that: (1)  his attorney's performance fell below "an objective standard of reasonableness" under "prevailing professional norms;" and (2) that he suffered prejudice as a result of that representation.[50]   A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's

---

[46]     *Puglisi*, 586 F.3d at 214.

[47]     *Id.* at 213 (quoting Rule 4(b) of the Rules Governing § 2255 Proceedings for the United States District Courts).

[48]     *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 81-82 (1977) (stating that courts "may employ a variety of measures in an effort to avoid the need for an evidentiary hearing")).

[49]     *Id.* (quoting *Raines v. United States*, 423 F.2d 526, 529-30 (4th Cir. 1970) (footnote omitted)).

[50]     *Strickland v. Washington*, 466 U.S. 668, 687-88, 693-94 (1984).

representation fell within the "wide range" of reasonable professional assistance.[51] It is the petitioner's burden to show "'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"[52] "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[53] "In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices."[54]

Even if an attorney's performance is objectively unreasonable, a petitioner must still prove prejudice.[55] "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'"[56] "The [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

---

[51]     *Id.* at 689.  *Accord Bell v. Cone*, 535 U.S. 685, 697-98 (2002).

[52]     *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 687).

[53]     *Strickland*, 466 U.S. at 690.

[54]     *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Stickland*, 466 U.S. at 690).

[55]     *See Stickland*, 466 U.S. at 687.

[56]     *Harrington*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 693).

reasonable probability is a probability sufficient to undermine confidence in the

outcome."[57]   As explained by the Supreme Court, the order of analysis of the two

*Strickland* prongs –  performance and prejudice – is at the discretion of the court.[58]

> [T]here is no reason for a court deciding an ineffective
> assistance claim to approach the inquiry in the same order
> or even to address both components of the inquiry if the
> defendant makes an insufficient showing on one.   In
> particular, a court need not determine whether counsel's
> performance was deficient before examining the prejudice
> suffered by the defendant as a result of the alleged
> deficiencies.  The object of an ineffectiveness claim is not
> to grade counsel's performance.  If it is easier to dispose of
> an ineffectiveness claim on the ground of lack of sufficient
> prejudice, which we expect will often be so, that course
> should be followed.[59]

Thus, if the court finds that there is no prejudice, it need not reach the performance

prong.[60]

A defendant is entitled to the effective assistance of counsel in

connection with plea negotiations because one of an attorney's basic duties is to

---

[57]     *Strickland*, 466 U.S. at 694.

[58]     *Id.* at 693 ("Even if a defendant shows that particular errors of counsel
were unreasonable, . . . the defendant must show that they actually had an adverse
effect on the defense.").

[59]     *Id.* at 697.

[60]     *See  Farrington v. Senkowski*, 214 F.3d 237, 242 (2d Cir. 2000)
(stating that courts need not resolve the *Strickland* performance prong if the
prejudice prong is more readily resolved).

16

advise his client on whether to plead guilty.[61]   Thus, the two-part *Strickland* test

applies to ineffective assistance of counsel claims arising out of the plea process.[62]

"As part of this advice, counsel must communicate to the defendant the terms of

the plea offer, and should usually inform the defendant of the strengths and

weaknesses of the case against him, as well as the alternative sentences to which he

will most likely be exposed."[63]

> In the context of a defense counsel's advice surrounding a
> plea offer, "[a] lawyer shall explain a matter to the extent
> reasonably necessary to permit the client to make informed
> decisions regarding the representation." *Purdy v. United
> States*, 208 F.3d 41, 45 (2d Cir. 2000) (internal quotation

---

[61]   *See Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) ("Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process."); *Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005) ("[C]ounsel has a professional obligation to adequately inform [his] client about the considerations that are relevant to [his] client's decision to accept or deny a plea bargain."); *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) (defense attorneys have "a constitutional duty to give their clients professional advice on the crucial decision of whether to accept a plea offer from the government"); *Purdy v. United States*, 208 F.3d 41, 44-45 (2d Cir. 2000).

[62]   *See Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) ('Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

[63]   *Purdy*, 208 F.3d at 44 (citation omitted).  *Accord Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012) (stating that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused").

marks omitted) (quoting Model Rules of Professional
Conduct Rule 1.4(b) (1995). "The decision whether to
plead guilty or contest a criminal charge is ordinarily the
most important single decision in a criminal case . . . [and]
counsel may and must give the client the benefit of
counsel's professional advice on this crucial decision."
*Boria v. Keane*, 99 F.3d 492, 496-97 (2d Cir. 1996)
(internal quotation marks omitted). . . . "[K]nowledge of
the comparative sentence exposure between standing trial
and accepting a plea offer will often be crucial to the
decision whether to plead guilty." *U.S. v. Gordon*, 156 F.3d
376, 380 (2d Cir. 1998) (per curiam) (citation and internal
quotation marks omitted).[64]

Thus, an attorney's failure to communicate a plea offer to his client, or to

inadequately advise his client about the decision to plead guilty, may constitute

ineffective assistance of counsel.[65]

        In order for a defendant to demonstrate prejudice resulting from

ineffective assistance in connection with a rejected plea offer,

        a defendant must show that but for the ineffective advice of
        counsel there is a reasonable probability that the plea offer
        would have been presented to the court (*i.e.*, that the
        defendant would have accepted the plea and the prosecution
        would not have withdrawn it in light of intervening
        circumstances), that the court would have accepted its
        terms, and that the conviction or sentence, or both, under

---

        [64]    *Carrion v. Smith*, 365 Fed. App'x 278, 281-82 (2d Cir. 2010)
(Amended Summary Order) (alterations in original).

        [65]    *See, e.g., Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999);
*United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998); *Boria v. Keane,* 99
F.3d 492, 496-97 (2d Cir. 1996).

the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.[66]

Furthermore, *Strickland's* "strong presumption" that counsel has a acted in a professionally competent manner is of limited relevance to the guilty plea context because plea advice usually does not implicate an attorney's strategic decision-making.[67] There can be no appropriate strategic reason for failing to inform a client of the facts and circumstances relevant to the plea decision. Counsel has a constitutional obligation to adequately inform his client about the considerations relevant to his client's decision to accept or deny a plea.[68] Counsel must take care not to coerce a defendant into either accepting or rejecting a plea offer.[69] Yet the ultimate decision whether to plead guilty must be made by the

---

[66]    *Lafler*, 132 S. Ct. at 1385.  *Accord Assadourian v. Brown*, 493 Fed. App'x 223, 224 (2d Cir. 2012) (Summary Order); *Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011).

[67]    *Cf. Davis*, 428 F.3d at 90 ("Our case law acknowledging that attorneys sometimes have strategic reasons for decisions that are later proven to be unsuccessful is inapposite in this case because [the attorney] could have had no appropriate strategic reason for failing to inform his client of the risks of proferring.").

[68]    *See Pham*, 317 F.3d at 182 ("A defendant suffers a Sixth Amendment injury where his attorney fails to convey a plea offer.  Defense counsel have a constitutional duty to give their clients professional advice on the crucial decision of whether to accept a plea offer from the government.").

[69]    *Purdy*, 208 F.3d at 45 (citations omitted).

defendant.[70]

## III.   DISCUSSION

Barnes' ineffective assistance claims rest primarily on whether he received objectively reasonable advice from Heinrich concerning his pre-trial sentencing exposure and the decision to proceed to trial, as well as his ultimate decision to plead guilty mid-trial.  If not, the question becomes whether he was prejudiced by any deficiencies in the advice given.  Both the AUSA and defense counsel agree that no formal plea offer was ever made to Barnes, despite Barnes' self-serving statement to the contrary.[71]  Accordingly, *Lafler* and *Frye* are distinguishable.  In *Lafler*, the attorney informed the defendant of a favorable plea offer which the defendant rejected based on the advice of counsel.[72]  In *Frye*, defense counsel did not even inform the defendant of a favorable plea offer.  The offer then lapsed and Frye pled guilty on more severe terms than those offered by

---

[70]     *See Davis*, 428 F.3d at 90 (stating that prevailing professional norms "require that a defendant make the ultimate, informed choice about whether or not to accept a plea offer and that a lawyer not exert undue influence on a defendant's decision"); *Purdy*, 208 F.3d at 45 (quoting Model Rules of Professional Conduct Rule 1.2(a) (1995) ("'In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered . . . .'")).

[71]     *See* Heinrich Decl. ¶ 6; Lester Decl. ¶ 3.

[72]     *See Lafler*, 132 S. Ct. at 1383.

20

the Government.[73]  With no plea offer ever made to Barnes, it would be entirely

speculative to consider the terms, including the length of sentence, of a theoretical

plea bargain.  Moreover, counsel had no duty to inform petitioner of any plea offer

when no such offer existed.  The absence of a plea offer is fatal to the ineffective

assistance of counsel claims made in this regard.[74]

Absent a plea offer, Barnes' remaining argument is that Heinrich

should have done more to convince him to plead guilty prior to trial and to secure a

favorable plea agreement from the Government.  Heinrich's Declaration makes

clear that his conduct in explaining the risks of trial and the benefits of a plea was

objectively reasonable.  Heinrich states that he reviewed with Barnes all of his

options, which included proceeding to trial, pleading guilty, and/or cooperating

with the Government.[75]  Heinrich also advised Barnes of the potential sentencing

exposure he was facing upon a guilty plea to both of the charges in the

---

[73]    *See Frye*, 132 S. Ct. at 1404-05.

[74]    *See Speed v. United States*, No. 12 Civ. 7777, 2013 WL 416026, at *3 (S.D.N.Y. Feb. 4, 2013) (rejecting a similar claim that, at the time petitioner elected to plead not guilty and proceed to trial, his counsel had inaccurately calculated the applicable Guidelines range and failed to successfully negotiate a disposition, on the ground that the claim was "futile" because the Government never made a plea offer).

[75]    *See Heinrich Decl. ¶ 4.*

Indictment.[76]  Heinrich also requested a *Pimentel* letter from the Government,

which set forth a Guidelines range of 360 months to life imprisonment and a

mandatory minimum sentence of ten years on Count One of the Indictment.

      The advice Barnes claims he received from Heinrich just prior to his

guilty plea – that his sentence "should be no more than 8 years" – is flatly at odds

with Barnes' plea allocution in which he acknowledged that there was a ten-year

mandatory minimum and that he understood that his Guidelines range could be as

high as thirty years.[77]  This Court need not assume the veracity of Petitioner's

factual assertions where, as here, the assertions are contradicted by the record in

the underlying proceeding.[78]

      The fact that Barnes chose to plead guilty mid-trial, without the

benefit of a plea agreement, does not reflect ineffective assistance on the part of

Heinrich.  Rather, it reflects the fact that the Government never conveyed a formal

plea offer in the criminal case.  Moreover, petitioner pled guilty to avoid the impact

---

[76]     *See id.*

[77]     *See* Tr. 137-38, 140-41.

[78]     *Cf. Puglisi*, 586 F.3d at 214, 218 (where the petitioner's "own statements at sentencing" contradicted the argument that he would have pled guilty had he received different advice, the court was "unwilling to accept the conclusory statements he now makes in support of his contention that he suffered actual prejudice in satisfaction of *Strickland*").

22

of damaging testimony from a former associate.  Under these circumstances, there is no basis to find Heinrich's assistance to be constitutionally ineffective within the plea context.

Barnes' assertion that Heinrich was ineffective in his filing, preparation for, and conduct during the suppression hearing is summarily rejected. The January 28, 2010 filing that Barnes claims was deficient was re-filed by Heinrich after he received notification that he had failed to sign his affirmation in support of the motion to suppress.  Given the record, which demonstrates that Heinrich filed and argued a suppression motion on Barnes' behalf, that he had a copy of the accident report that Barnes now claims was vital to the investigation of his case prior to the hearing, and that he had a full opportunity to cross-examine the police officers who testified, there is absolutely no basis for any allegation of ineffective assistance in connection with the suppression hearing.

Similarly, Barnes' contention that Heinrich was suffering from financial difficulties that adversely affected his ability to represent him is nothing more than a self-serving statement without any support in the record.  Barnes' statements about Heinrich's purported financial problems are flatly contradicted by Heinrich's Declaration which demonstrates that Barnes' mother owed him more

than $4,000 in legal fees.[79]   Moreover, Barnes has failed to allege how Heinrich's

supposed financial problems impacted his case in any way, let alone adversely.

Moreover, Barnes has not established that he suffered any prejudice from

Heinrich's alleged money problems.

      In sum, Heinrich correctly advised Barnes of his options and the risks

and benefits of each option.  As was his right, Barnes chose to proceed to trial and

then chose to plead guilty mid-trial without a plea agreement.   Because counsel's

representation comported with constitutional standards, the Motion is denied.

## IV.    CONCLUSION

      For the foregoing reasons, Barnes' section 2255 Motion is denied in

its entirety.  The remaining issue is whether to grant a Certificate of Appealability

("COA").  For a COA to issue, a petitioner must make a "substantial showing of

the denial of a constitutional right."[80]  A "substantial showing" does not require a

petitioner to demonstrate that he would prevail on the merits, but merely that

"reasonable jurists could debate whether . . . the petition should have been resolved

in a different manner or that the issues presented were 'adequate to deserve

---

[79]     *See* Heinrich Decl. ¶ 9 and Ex. 1.

[80]     28 U.S.C. § 2253(c)(2).

encouragement to proceed further.'"[81]  Petitioner has made no such showing.

Accordingly, this Court declines to issue a Certificate of Appealability.  The Clerk

of the Court is directed to close this case.


SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 2, 2013

---

[81]      *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (quoting *Barefoot* v.
*Estelle,* 463 U.S. 880, 893 & n.4 (1983) (quotation marks and citations omitted)).
*Accord Middleton* v. *Attorneys Gen. of the States of New York and Pennsylvania,*
396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not
debate whether the district court's dismissal of the petition was correct).

**- Appearances -**

**Petitioner (Pro Se):**

Tyrone Barnes
# 62842-054
Federal Medical Center - Devens
Unit GB
P.O. Box 879
Ayer, MA 01432

**For Respondent:**

Amy Lester
Telemachus Kasulis
Assistant United States Attorneys
One St. Andrew's Plaza
New York, NY 10007
(212) 805-2416/2411

**Petitioner's Former Counsel:**

Benjamin Heinrich, Esq.
Benjamin Heinrich, P.C.
189 East 163rd Street
Bronx, NY 10451
(718) 588-4400