```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                   :
UNITED STATES OF AMERICA                                           :
                                                                   :
            -v-                                                    :
                                                                   :      09-cr-1053 (LJL)
TYRONE BARNES,                                                     :
                                                                   :      OPINION &
                                  Defendant.                       :      ORDER
                                                                   :
------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/3/2020

LEWIS J. LIMAN, United States District Judge:

Defendant Tyrone Barnes ("Defendant") moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. No. 73.) The Government opposes the motion. (Dkt. No. 79.)

## BACKGROUND

On June 9, 2010, Defendant was convicted—following a mid-trial guilty plea—of conspiracy to distribute heroin in violation of 21 U.S.C. § 846 and distribution and possession with intent to distribute heroin in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C). (*See* Dkt. Nos. 35, 49.) The charges stemmed from Defendant's conduct, over a 14-year period, of controlling the distribution of heroin in a public housing development located in the Bronx, New York.[1] Throughout that period, Defendant employed various narcotics trafficking personnel, including "pitchers" who conducted hand-to-hand sales of drugs to customers in exchange for cash and "managers" who collected money from pitchers, re-supplied them with narcotics to sell to customers, and provided narcotics proceeds to Defendant. The Bronx heroin distribution organization led in part by Defendant grossed staggering amounts of money—over

---

[1] Unless otherwise indicated, the facts in this opinion are taken from the presentence investigation report.

$150,000 per week in sales.

On July 21, 2011, the Hon. Shira A. Scheindlin (to whom the matter was then assigned) sentenced Defendant to a term of imprisonment of 210 months. Judge Scheindlin found that he was responsible for distributing more than three kilograms of heroin in the Bronx over the 14-year period. (Dkt. No. 79-1 at 4.) Judge Scheindlin also found that Defendant was an organizer or leader of the narcotics operation. (*Id.* at 5.) On January 6, 2016, Defendant's sentence was reduced to 168 months pursuant to the First Step Act. (Dkt. No. 71.)[2] He is currently incarcerated under the custody of the Bureau of Prisons ("BOP") at the Federal Correctional Institute at Fort Dix in New Jersey ("FCI Fort Dix"). He has two years remaining in his sentence.

In support of his motion, Defendant states that he currently suffers from hypertension, that he has high blood pressure for which he receives treatment, that he takes aspirin for his heart, that he is vitamin-D deficient, and that he is pre-diabetic. (Dkt. No. 79 at 2–3.) He also states that he has ongoing infections in the lower extremities of both legs as a result of varicose veins. (*Id.* at 3.) He has been scheduled for vascular surgery. (*Id.*) He argues that the circumstances created by COVID-19, as well as the danger of its spread within prisons, present "extraordinary and compelling" reasons that entitle him to release. (*Id.* at 10–13.)[3]

The Government opposes the motion. It does not dispute that Defendant has articulated

---

[2] Defendant received a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) because his original sentence was higher than the sentence at the bottom of the newly-amended applicable Sentencing Guidelines range. (*See* Dkt. Nos. 67, 70, 71.)

[3] The Government states that it has been informed by the BOP that there are currently no inmates who have tested positive for COVID-19 at FCI Fort Dix (but two inmates who have tested positive at a separate but adjacent facility). (Dkt. No. 79 at 2.) The BOP's website reflects that two inmates are currently reflected as having "tested positive" at "Fort Dix FCI." "COVID-19 Cases," Bureau of Prisons, https://www.bop.gov/coronavirus/. It does not differentiate between any separate facilities therein. The BOP's website also reflects that 37 inmates (and five staff) have recovered from COVID-19 at "Fort Dix FCI." *Id.*

"extraordinary and compelling reasons" for release.  (Dkt. No. 79 at 5.)  It argues, however, that the motion should be denied because Defendant has failed to exhaust administrative remedies and because the relevant factors under 18 U.S.C. § 3553(a) weigh against a sentence modification.  (*Id.*)

## **LEGAL STANDARD**

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. Jan. 15, 2020).  Section 3582(c) of Title 18 permits courts to modify an imposed term of imprisonment.  Specifically, in relevant part, it provides that the court may not modify a term of imprisonment once it has been imposed except that—

> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c).  The "applicable policy statements issued by the Sentencing Commission" are found in U.S.S.G. § 1B1.13.  That section of the Guidelines states, in relevant part:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the

3

>factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
>(1) (A) extraordinary and compelling reasons warrant the reduction; . . .
>
>(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
>(3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

## DISCUSSION

The parties dispute whether 30 days have elapsed since the warden of FCI Fort Dix received a request from Defendant for the BOP to bring a compassionate release motion on his behalf. Defendant swears that he submitted such a request to the warden on or about April 10, 2020. (Dkt. No. 73 at 2.)[4] Thus, if Defendant is to be believed, 30 days have elapsed and the 18 U.S.C. § 3582(c)(1)(A) requirement is satisfied. But the Government asserts that the BOP has no record of that request and thus the statutory requirement should be deemed not to be satisfied. (Dkt. No. 79 at 4.)

The Court need not address whether this statutory requirement is satisfied. As this Court previously has held, and as the Government has admitted in numerous submissions, the First Step Act's pre-filing requirements are not jurisdictional.[5] *See, e.g.*, *Russo*, 2020 WL 1862294, at *4; *United States v. Haney*, 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020); Letter Response

---

[4] According to the Government, defense counsel clarified that the request was made on or about April 5, 2020.

[5] Courts, including this one, commonly call this section of the statute an "exhaustion requirement," *see United States v. Russo*, 2020 WL 1862294, at *6 (S.D.N.Y. Apr. 14, 2020); *United States v. Gluzman*, 2020 WL 4233049, at *10 (S.D.N.Y. July 23, 2020), but that is a misnomer. The statute refers in the disjunctive to *either* the defendant having "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). The requirement is therefore better understood as a pre-filing requirement, similar to that under Title VII. *Cf. Gluzman*, 2020 WL 4233049, at *12.

in Opposition, *United States v. Gentille*, No. 19-cr-590 (S.D.N.Y. Apr. 6, 2020), Dkt. No. 31 (Government submission characterizing "Section 3582(c)(1)(A)'s exhaustion requirement" as "not a jurisdictional bar"). It follows that, if an alternative basis exists for ruling on Defendant's motion and if that alternative basis would obviate a need for fact-finding on the question of whether Defendant has satisfied the pre-filing requirement, the Court can reach that alternative basis.

The Court finds that, assuming Defendant satisfied the First Step Act's pre-filing requirement, Defendant is not entitled to compassionate release. The statute commands that courts "consider[] the factors set forth in section 3553(a) to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A). Thus, whether "extraordinary and compelling reasons" exist is only "[t]he threshold question." *United States v. Daugerdas*, 2020 WL 2097653, at *2 (S.D.N.Y. May 1, 2020).

After considering those factors, the Court concludes that compassionate release at this time is not appropriate or consistent with the Section 3553(a) factors. Defendant committed an extraordinarily serious crime. As Judge Scheindlin noted at the time of sentence, Defendant's crime caused "untold harm to many, many people" and Defendant "had to have known that the business he ran ultimately destroyed lives." (Dkt. No. 79-1 at 20.) The conduct took place over an extended period of time—more than a decade—and Defendant played a leadership role. It also generated an enormous amount of money, from which he "took the lion's share of the profits." (*Id.* at 5.) When Defendant was arrested, he had two gravity knives. (*Id.* at 5.) Despite that fact, Judge Scheindlin declined to impose a sentencing enhancement for the use of a dangerous weapon and sentenced Defendant at the low end of the Sentencing Guidelines range. (*Id.* at 19–20.) The sentencing judge concluded that the seriousness of Defendant's crime

"requires a significant term of incarceration" and informed Defendant that his sentence "could have been far worse." (*Id.* at 18–19.) Defendant since has had his sentence further reduced by three and a half years pursuant to the First Step Act. (Dkt. No. 71.)

All of those facts argue compellingly and convincingly against compassionate release, notwithstanding the "extraordinary and compelling reasons" that fall in his favor. *Cf. United States v. Monsanto Lopez*, 2020 WL 2555305, at *1 (S.D.N.Y. May 20, 2020) (concluding that, even if the defendant could demonstrate extraordinary and compelling reasons for his release, the Section 3553(a) factors "strongly counsel against releasing [him]," a person "who was the organizer and leader of a sophisticated, years-long narcotics smuggling and distribution conspiracy"); *United States v. Reese*, 2020 WL 2554381, at *2 (S.D.N.Y. May 20, 2020) (concluding that, even if the defendant could demonstrate extraordinary and compelling reasons for release, "the factors listed in 18 U.S.C. Section 3553(a) would still weigh against his release on balance" because, "[a]mong other considerations, [the defendant] played a leadership role in a serious and sophisticated crime that harmed numerous victims over a substantial period of time").

Defendant argues that the deterrent effect of the COVID-19 virus is a powerful motivator for him never to see another federal courtroom as a defendant. He also argues that the sentencing judgment itself, regardless of the time he has served, is a powerful statement of the need for respect for the law. He urges that his sentence to date has already achieved the necessary measure of general and specific deterrence. Those arguments do not convince the Court. Under both the statute and common sense, the force of a sentence and its ability to satisfy the Section 3553(a) considerations is a function not only of what it says but how much time is served. It is not sufficient that the sentencing document made a statement. Nor is it sufficient

that COVID-19 may have a deterrent impact.  Even crediting Defendant's statement, there will come a day when COVID-19 does not plague our society.  And the Court must consider not only deterrence, but also the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).

For the foregoing reasons, Defendant's motion is DENIED.  The Clerk of Court is respectfully directed to close Dkt. No. 73.

SO ORDERED.

Dated: August 3, 2020
       New York, New York

_____
LEWIS J. LIMAN
United States District Judge